UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**DAZZLING DIAM LLC**

                                   *Plaintiff,*
            **-against-**

**GARFIELD REFINING, LLC**

                                   *Defendant*.

---

**24-cv-8023 (ALC)**

<u>**OPINION & ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Dazzling Diam LLC brings the instant action against Defendant Garfield

Refining, LLC, alleging breach of contract, promissory estoppel, and negligence. Pending before

the Court is Defendant's motion to compel arbitration. Defendant has moved, in the alternative,

to dismiss or to stay pending the outcome of a criminal case against Plaintiff's sole member and

owner. ECF No. 29. After reviewing the Parties' submissions and the relevant materials, the

Court **GRANTS** Defendant's motion to compel arbitration without prejudice.

**BACKGROUND**

## I.    <u>Factual Background</u>

Defendant Garfield Refining LLC is a family-run refining business based in Philadelphia,

Pennsylvania. Defendant's Motion to Compel Arbitration and Alternative Motion to Dismiss or

Stay Plaintiff's Amended Complaint ("Deft. Mot.") at 3; First Amended Complaint ("FAC") ¶ 5.

Refining is "a form of recycling in which products or byproducts containing precious metals (such

as jewelry or dental scrap) are isolated back into purified states for recirculation." Deft. Mot. at 3.

According to Morgan Kerrisey, Defendant's President, Defendant does not purchase gems or

1

diamonds and does not guarantee their recovery during its refining process. [1] Declaration of Morgan Kerrissey ("Kerrissey Decl.") ¶ 10.

Plaintiff Dazzling Diam LLC is a limited liability corporation based in New York, New York engaged in the jewelry business. FAC ¶ 4; Deft. Mot. at 3. Plaintiff alleges that it purchased gold with lab-grown diamonds from another corporate entity, Diamsparkz, for $134,523.96 and purchased gold mounting from Diamsparkz for $5,893.40. *Id.* ¶¶ 6-7. After this, interested in refining services, Plaintiff discovered Defendant through a Google search and called the phone number associated with Defendant that was displayed on the Google web search sidebar. *Id.* ¶ 9.

Defendant conducts business pursuant to its Standard Terms and Conditions.[2] Deft. Mot., 3-4. The Standard Terms are hyperlinked on Defendant's main webpage under the "About" section as well as at the bottom of the page. Kerrissey Decl. Exhibit 3. Defendant's customers use this same navigation pane to obtain the shipping label needed to use Defendant's refining services. *Id*. ¶¶ 15-16.

The Standard Terms are as follows:

**TERMS & CONDITIONS**

BY USING THIS WEBSITE TO OBTAIN A SHIPPING LABEL AND/OR BY

SHIPPING MATERIALS TO OR PURCHASING MATERIALS FROM GARFIELD

---

[1]    The Court may consider extrinsic declarations and documents in deciding a motion to compel arbitration. *See Meyer v. Uber Techs. Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (a court deciding a motion to compel arbitration applies a standard similar to summary judgment, where the court may consider "all relevant, admissible evidence submitted by the parties").

[2]    The Terms of Use are also incorporated by reference into the Complaint as "documents possessed by or known to [Plaintiffs] and upon which [they] relied in bringing suit." *Underwood v. Coinbase Glob., Inc.*, 654 F. Supp. 3d 224, 237 (S.D.N.Y. 2023) (finding terms of use incorporated by reference in action against cryptocurrency trading platform), *aff'd in part, rev'd in part and remanded sub nom. Oberlander v. Coinbase Glob. Inc.*, 2024 WL 1478773 (2d Cir. Apr. 5, 2024). In deciding such a motion, Courts "draw[ ] all reasonable inferences in favor of the non-moving party." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 834 (2d Cir. 2021) (quoting *Meyer*, 868 F.3d at 74).

REFINING LLC, YOU AFFIRM THAT YOU ARE OF LEGAL AGE TO ENTER INTO THIS AGREEMENT, AND YOU ACCEPT AND ARE BOUND BY THESE STANDARD TERMS AND CONDITIONS. YOU AFFIRM THAT IF YOU SHIP MATERIALS TO GARFIELD REFINING LLC ON BEHALF OF AN ORGANIZATION OR COMPANY, YOU HAVE THE LEGAL AUTHORITY TO BIND ANY SUCH ORGANIZATION OR COMPANY TO THESE TERMS.

[. . .]

1. Terms and Conditions: These Standard Terms and Conditions, shall apply to any and all transactions between Garfield Refining LLC ("Company") and the Customer (collectively the "Parties"). This agreement shall supersede any and all prior and/or contemporaneous agreements between the Parties, [. . .]. If Customer does not execute these Standard Terms and Conditions, Customer's performance of downloading a shipping label, shipping Materials, and/or purchasing Materials from Company shall be deemed acceptance by performance by Customer.

5. Dispute Resolution: BY ACCEPTING THESE TERMS, AND TO THE FULLEST EXTENT ALLOWED BY LAW, THE PARTIES AGREE TO SUBMIT ANY AND ALL DISPUTES ARISING FROM OR RELATING TO THESE TERMS AND CONDITIONS OR ANY AND ALL TRANSACTIONS STEMMING FROM THE RELATIONSHIP CREATED BY THESE TERMS AND CONDITIONS TO BINDING ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT (TITLE 9 OF THE UNITED STATES CODE). **FOR THIS REASON, PLEASE CAREFULLY REVIEW THE FOLLOWING TERMS THAT GOVERN ANY AND ALL DISPUTES:**

**- [. . .]. THE PARTIES AGREE THAT ANY AND ALL DISPUTES, INCLUDING BUT NOT LIMITED TO CHALLENGES TO THE VALIDITY AND ENFORCABILITY**

3

**OF THIS DISPUTE RESOLUTION PROVISION, WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION RATHER THAN IN COURT BY A JUDGE OR JURY, IN ACCORDANCE WITH THESE TERMS AND CONDITIONS.**

**- YOU WAIVE YOUR RIGHT TO A JURY TRIAL AND TO LITIGATE DISPUTES IN COURT IN FAVOR OF INDIVIDUAL ARBITRATION[.]**

Kerrissey Decl., Ex. 2.

Plaintiff engaged in two business transactions with Defendant. Deft. Mot. at 6. On May 7, 2024, Plaintiff alleges that its then-employee Deep Shukla spoke to Defendant's Director of Sales, Eric Koppelman, to send a small shipment of jewelry for refining. FAC ¶¶ 10-11. After this call, Koppelman emailed Plaintiff a shipping label and payment preference form, which Plaintiff completed, and Plaintiff shipped Defendant the gold and diamonds. *Id.* ¶¶ 20-21. Defendant then provided refining services and returned the lab-grown diamonds to Plaintiff. *Id.* ¶ 23. After receiving the diamonds, Plaintiff observed "dust" on the stones and contacted Defendant. *Id.* ¶¶ 24-25. Plaintiff apparently received assurances this would not happen again and continued doing business with Defendant. *Id.* ¶¶ 26-27.

On May 17, 2024, Plaintiff sent Defendant 1,594 grams of 14k gold together with allegedly lab-grown diamonds valued "in excess of $122,000.00." *Id.* ¶ 34. Defendant performed the refining service. Later Plaintiff said 285 carats of the commingled diamonds had been destroyed and what remained was not the same quality as it had been when it was sent to Defendant. *Id.* ¶ 40.

## II.    Procedural History

On August 8, 2024, Plaintiff Dazzling Diam LLC filed its Complaint in the Supreme Court of the State of New York, New York County in an action entitled *Dazzling Diam LLC v. Garfield Refining*, Case No. 654102/2024 (the "State Court Action"). On October 22, 2024,

4

Defendant Garfield Refining, LLC removed the case to this Court on the basis of diversity of citizenship. ECF No. 1. On January 6, 2025, Defendant filed a motion to compel arbitration, motion to dismiss, and motion to stay. ECF No. 16. On January 17, 2025, Plaintiff filed its First Amended Complaint ("FAC"). ECF No. 20. On February 7, 2025, Defendant filed its Reply. ECF No. 24. On February 13, 2025, the Court denied Defendant's motion as moot because Plaintiff filed the FAC and set a new briefing schedule for Defendant's renewed motion. ECF No. 27. On March 6, 2025, Defendant filed a second motion to compel arbitration, motion to dismiss, and motion to stay. ECF No. 29. On March 20, 2025, Plaintiff filed its Opposition. ECF No. 32. On March 27, 2025, Defendant filed its Reply. ECF No. 33.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), which governs arbitration agreements, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that the FAA established "a liberal federal policy favoring arbitration agreements" and that courts must "rigorously . . . enforce arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018) (citation omitted). Parties may agree to have an arbitrator decide both "'gateway' questions of 'arbitrability'" and the merits of their contractual disputes. *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.,* 568 U.S. 63, 64–65 (2019). Questions of arbitrability include: "(1) 'whether the parties are bound by a given arbitration clause' and (2) 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 45 (E.D.N.Y. 2017) (quoting *VRG Linhas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 n.2 (2d Cir. 2013)).

When determining whether the parties have entered a valid agreement to arbitrate, "courts should apply ordinary state-law principles that govern the formation of contracts," and evaluate the allegations "to determine whether they raise a genuine issue of material fact." *Sacchi v. Verizon Online LLC*, No. 14-cv-00423, 2015 WL 765940, at \*4 (S.D.N.Y. Feb. 23, 2015) (internal citations and quotation marks omitted). Indeed, when deciding a motion compel, courts must first determine "whether the parties agreed to arbitrate" in the first place. *Id.*

Courts must also decide "whether the issue of arbitrability is for the court or for the arbitrator." *Gringas v. Think Fin., Inc.*, 922 F.3d 112, 125 (2d Cir. 2019) (quoting *Bell*, 293 F.3d at 565). Courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Schein*, 139 U.S. at 72 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The Supreme Court has "distinguished between 'questions of arbitrability,' which are to be resolved by the courts unless the parties have clearly agreed otherwise, and other 'gateway matters,' which are presumptively reserved for the arbitrator's resolution." *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 45 (2d Cir. 2003) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002)). Moreover, questions of arbitrability are subject to judicial resolution unless "there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that [those issues were to] be decided by the arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (internal quotation marks omitted).

6

## DISCUSSION

### I.     Plaintiff Entered into a Valid and Enforceable Arbitration Agreement

The dispositive question in this case is whether Plaintiff assented to Defendant's Standard Terms and Conditions ("Standard Terms"). The Court must first decide whether there is an agreement to arbitrate.  "While federal policy generally favors arbitration, the obligation to arbitrate nevertheless remains a *creature of contract*.  Because arbitrators' authority arises only when the parties agree in advance to that forum, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)) (emphasis added).

Under New York law,[3] "to create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. and Term. Corp. v. N.Y. State Dep't. of Transp.*, 93 N.Y.2d 584, 589 (1999). Here, Defendant contends that there was a valid arbitration agreement and that Defendant only performs refining services pursuant to such agreement. The Standard Terms "apply to any and all transactions between [Defendant] and [its] [c]ustomer[s] . . . and that shipping [m]aterials, and/or purchasing [m]aterials from [Defendant] shall be deemed acceptance by performance by [the] [c]ustomer" and "any and all disputes" between a customer and Defendant shall be resolved through binding arbitration. Deft. Mot. at 1. Plaintiff does not contest that a valid arbitration agreement existed. Instead, Plaintiff argues that it is not bound by arbitration because Plaintiff "did not have inquiry notice of, was never directed to, made aware of, nor did it agree to, Defendant's standard terms and conditions on its website." Pl. Opp. at 1.

---

[3]     While Pennsylvania law also governs this case, Plaintiff does not oppose Defendant's application of New York law, so the Court will apply New York law.

### A.  Plaintiffs Had Some Reasonable Notice of the Arbitration Provision

Plaintiff contends that it was never directed to Defendant's Standard Terms on its website when Plaintiff engaged in business with Defendant in May 2024. However, New York law does not require actual notice of an arbitration agreement, which can be binding "when [the user] . . . has at least constructive knowledge of the [agreement's] terms[.]" *Kassim v. CVS Albany, LLC*, No. 21-2927, 2022 WL 4357456, at *8 (E.D.N.Y. Sept. 20, 2022). A plaintiff can be bound by arbitration if they were on inquiry notice of the agreement. "In determining whether an offeree is on inquiry notice of contract terms, New York courts look to whether the term was obvious and whether it was called to the offeree's attention." *Starke v. SquareTrade, Inc*., 913 F.3d 279, 289 (2d Cir. 2019) Additionally, a plaintiff is not required to have signed an arbitration agreement. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 445 (2020). Of particular importance in this case is the fact that Plaintiff was not an unsophisticated consumer but rather a corporate entity. The standard for corporate entities to be on constructive or inquiry notice of standard terms is lower than that for a lay consumer. *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012) (explaining that "courts have been [more] willing to enforce terms of use against corporations" when there is the "absence of assent" "based on the reasonable supposition that such awareness may be more likely with corporations than individuals").

Defendant's Standard Terms were located in at least two obvious areas of Defendant's website, the About section and at the bottom of the main webpage. FAC ¶¶ 15-16. As Defendant argues, it is implausible that Plaintiff sent over $122,000 worth of jewelry to Defendant for refining services without reading through the Standard Terms on the website. Deft Mot. at 15. However, even if Plaintiff did not have actual notice, it certainly had inquiry notice as a

8

corporation doing business with another corporation. Courts will find a plaintiff subject to mandatory arbitration when they could have read the agreement with "one or two clicks of the mouse," which is the case here, given that the Standard Terms were hyperlinked at the bottom of the main page. *Starke v. Gilt Groupe, Inc.,* No. 13-5497, 2014 WL 1652225, at *2-3 (S.D.N.Y. Apr. 24, 2014) Plaintiff argues that Defendant's "terms and conditions . . . were not presented to Plaintiff in a clear and conspicuous way." Pl. Opp. at 6. But the standard for inquiry notice is whether a party would have been on notice if it had acted in a reasonably prudent manner. *See Picha v. Gemini Tr. Co., LLC*, No. 22-10922, 2024 WL 967182, at *9 (S.D.N.Y. Mar. 5, 2024). Thus, the Court finds that Plaintiff was on inquiry notice because if it had acted reasonably prudently it would have read the Standard Terms. Accordingly, the Court **GRANTS** the motion to compel arbitration and stays the litigation pending arbitration

The Court denies the Defendant's alternative requests for relief.

### CONCLUSION

For the reasons set forth by the Court, Defendant's motion to compel arbitration of claims is **GRANTED**. The parties are ordered to file a joint status report every 90 days regarding the status of arbitration, starting May 21, 2026.

The Clerk of Court is respectfully requested to terminate ECF No. 28.

**SO ORDERED.**

**Dated: February 20, 2026**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

9